UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. 3:16-CV686

| | |
|---|---|
| CHARLES TONY CAPE; BRETT ALEXANDER TRANTHAM; MATTHEW HALL; RICK WILLIAMS; NICK HELSM; MATTHEW HUNTER DEAL; and JIMMY PAXTON, for themselves and all other similarly situated persons, <br><br> Plaintiffs, <br><br> v. <br><br> MAGIC ONE ARS, INC.; MAGIC ONE, LLC; MAGIC ONE CARS OF SC, INC.; MAGIC HOLDINGS, LLC; INTERIOR MAGIC OF SOUTH CAROLINA, INC.; and MICHAEL E. MINOR, <br><br> Defendants. | **PLAINTIFFS' MEMORANDUM IN IN OPPOSITION OF DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS AND MOTION FOR PROTECTIVE ORDER** |

Defendants ask this court for a windfall: to bar Plaintiffs' class-action claims from being heard on the merits. Defendants argue that Plaintiffs' class-action claims should be stricken because Plaintiffs not only missed a scheduling deadline, but also engaged in "sandbagging" and other improper conduct.

Rather than some "deliberate" and nefarious scheme, Plaintiffs' failure to timely move for class certification was the result of an honest mistake: Plaintiffs inadvertently calendared only the "minute order" portion of this Court's scheduling order. In all other respects, Plaintiffs have diligently pursued their class-action claims.

The district court has the discretion to allow Plaintiffs' claims to proceed, as Plaintiffs have demonstrated the requisite "good cause" and "excusable neglect." In the absence of any

showing of prejudice to Defendants, striking the class action allegations in Plaintiffs' complaint would not serve the interests of justice.

## PROCEDURAL BACKGROUND

Plaintiffs incorporate the procedural history, as detailed in support of Plaintiffs' Motion to Extend Discovery (hereinafter, "Plaintiffs' Motion"). (*See* DE-45, DE-46 pp. 1-8) The relief sought by Plaintiffs' Motion is mutually exclusive with the relief sought by Defendants' Motion to Strike Class Action Allegations (DE-47) and Motion for a Protective Order (DE-49) (collectively, "Defendants' Motions"). Plaintiffs submit this separate brief to address the specific arguments made in support of Defendants' Motions.[1]

## ARGUMENT

The district court has wide discretion to manage its discovery and pretrial proceedings, *see Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274 (4th Cir. 1987), and the Federal Rules of Procedure embody a policy of resolving cases on the merits, *see id.* at 279; *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("[I]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits").

The policy favoring resolution of cases on the merits has limits, of course, and parties who fail to seek an extension of time before the expiration of a discovery deadline must show both "good cause" and "excusable neglect" to warrant extension of the same, under Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure. *See, e.g.*, *Anderson v. Caldwell County Sheriff's Office*, No. 1:09-CV-423, 2011 U.S. Dist. LEXIS 7768, at *3 (W.D.N.C. Jan. 20, 2011).

---

[1] Plaintiffs do not submit a reply brief with regards to their Motion to Extend Discovery, in accord with Section 3(c)(i) of the Amended Case Management Order. (DE-35)

The district court can enlarge the time contained in a scheduling order when the deadline has already run "if the party failed to act because of excusable neglect." *See, e.g.*, *id.* at *3. "In determining whether the neglect was excusable, the court looks to [1] the good faith of the movant, [2] the extent of the delay, and [3] the danger of prejudice to the opposing party." *Anderson*, 2011 U.S. Dist. LEXIS 7768, at *4; *see also Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) (delineating the multifactor balancing test in five sub-parts); *Tyndall v. Maynor*, 288 F.R.D. 103, 109-10 (M.D.N.C. 2013) ("The United States Supreme Court has explained that the excusable neglect inquiry 'is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'") (quoting *Pioneer*, 507 U.S. at 395)).

Although a demanding standard, "excusable neglect" is "a somewhat 'elastic concept' and is <u>not</u> limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer*, 507 U.S. at 392 (emphasis added); *see also Anderson*, 2011 U.S. Dist. LEXIS 7768, at *4 ("[I]n applying Rule 6(b), the Courts of Appeals have generally recognized that 'excusable neglect' may extend to inadvertent delays.").

In *Peche v. Keller*, 2012 U.S. Dist. LEXIS 80865, No. 1:11-cv-362 (M.D.N.C. June 12, 2012), the district court found excusable neglect when counsel for defendant "candidly acknowledged and sought leave to correct his failure to file a timely answer" that was 35 days overdue. *Id.* at *12; *see also id.* at *22 (reasoning that "other courts have deemed such periods of delay 'minimal.'" (citations omitted)). The district court reached this conclusion *even though* one of the primary factors of the analysis—the "reason for delay"—weighed *against* a finding of excusable neglect. *See id.* at *25 (quoting and interpreting *Pioneer* as "mak[ing clear that, even where an attorney is 'remiss' in allowing a deadline to pass (i.e., lacks an acceptable reason for

his or her oversight), a court may find excusable neglect when the record lacks 'any evidence of prejudice to [the opposing party] or to judicial administration in th[e] case, or any indication at all of bad faith'"). Similarly, in *Bolus v. Fleetwood RV, Inc.*, 308 F.R.D. 152 (M.D.N.C. 2015), the district court found excusable neglect under Rule 6(b) for failure to effect service, even though *six months* had passed since the expiration of deadline. *See id.* at 157-58 (placing weight in the notice to the defendants of the allegations asserted against them).[2]

Plaintiffs readily admit their inadvertent and incorrect reading of this Court's scheduling order, which initially appeared to counsel as a text-only "minute" order on the CM/ECF system. (*See* DE-46, ¶¶ 19, 45-46) This Court nevertheless should allow Plaintiffs' class action claims to be heard on the merits because Defendants can demonstrate no prejudice and the length of the delay was minimal. At all times, Plaintiffs have acted in good faith and diligently pursued their class claims. Once Plaintiffs were made aware of their mistake, they moved immediately for the appropriate relief. Plaintiffs have not asked this Court for any other extensions in this case.

An "equitable inquiry" that examines "all relevant circumstances surrounding [Plaintiffs'] omission," shows that Plaintiffs have good cause and excusable neglect for their inadvertence. *See Pioneer*, 507 U.S. at 395. Plaintiffs respectfully request that this Court, in its exercise of sound discretion, allow their class action claims to be heard on the merits.

---

[2] The "extensive caselaw" cited by Defendants reaching the opposite result includes dissimilar fact patterns and aggravating circumstances not present in this matter. *See, e.g.*, *Kotsias v. CMC II, LLC*, No. 1:15-CV-00242, 2017 WL 3401518 (W.D.N.C. Aug. 8, 2017) (dismissing action after plaintiff filed for multiple continuances, made no serious efforts to prepare for trial, and accused the defendants of fraud, misconduct, and murder without supporting evidence, while Defendants had incurred substantial costs preparing for trial); *In re Pella Corp.,* MDL No 2514, No. 2:14-mn-00001, 2015 WL 4162442, at 14 (D. S.C. July 9, 2015) (denying class certification nine years after suit first filed, and five years after specific class claims were abandoned by plaintiffs' "repeated insistence that they were not moving for certification with regard to those class claims"); *Jones v. N. Carolina Dep't of Corr.,* No. 1:11CV470, 2013 WL 433922, (M.D.N.C. Feb. 5, 2013) (refusing to allow a second extension of discovery deadline one day before the end of a prior five-month extension); *Lee v. Dell Prods., L.P.,* 236 F.R.D. 358 (M.D. Tenn. 2006) (terminating class claims after plaintiffs failed to file a motion for class certification after six deadline extensions).

1. **Defendants cannot establish any prejudice.**

The U.S. Court of Appeals for the Fourth Circuit has held that "delay in and of itself does not constitute prejudice to the opposing party," *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 418 (4th Cir. 2010), and that no prejudice accrues from "los[ing] a quick [default-based] victory," *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988).

Nonetheless, Defendants variably claim they would be "severly [*sic*] prejudiced" (DE-48, p. 7) or "punished" (DE-51, p. 6) if this Court allows the case to proceed on the merits of the class claims. Elsewhere, without elaboration, Defendants assert they have relied upon the scheduling order "in crafting their defenses" and "plann[ing] their strategy." (DE-48, p.1; DE-51, p.2)

The only discernable "strategy" deployed by Defendants is one of delay. The procedural background establishes that Defendants asked for multiple extensions to respond to written discovery (*see* DE-46, ¶¶15-18, 21-32); engaged in needless attempts to burden Plaintiffs, including with scrambled written discovery (*id.* ¶¶ 34-38); and failed to answer communications from Plaintiffs for periods of weeks. (*id.* ¶¶ 39-44)

Defendants also argue prejudice in the form of unfair surprise, as they claim "Plaintiffs appeared to have decided not to pursue a class." (DE-48, p. 8) This assertion finds no support in the record. By Defendants' own admission, Plaintiffs' written discovery requests focused on class certification issues. (DE-48, p. 8) Plaintiffs diligently pursued full and complete discovery responses, including through two deficiency letters dated June 22 and July 25, 2017. (DE-46, ¶¶ 29-31; *see also* "Exhibit 5" [DE 48-5] and "Exhibit 6" [DE 48-6])

Defendants feign surprise that Plaintiffs then noticed deposition topics on October 2, which again focused almost exclusively on class certification issues. (DE-49, ¶11) Defendants *knew* that Plaintiffs would remain focused on class certification because counsel for Plaintiffs told them so, almost a month earlier: "My plan for the depositions will be to focus on class certification issues and leave for another day questions on liability. This of course will be reflected in the 30b notices, to be filed." (*See* Exhibit 1)[3] These undisputed facts cannot be squared with Defendants' conclusions that "Plaintiffs have made no effort to pursue their class claims," (DE-48, p. 9) and that "[p]ut simply, Plaintiffs' *entire course of conduct* has indicated that Plaintiffs no longer intend to pursue class claims." (DE-50, p. 2) (emphasis added)

Lastly, Defendants make two confusing arguments relating to surprise, based on (1) the amendment of the case caption by consent motion on June 20, 2017 (*see* DE-43), and (2) the observation that Plaintiffs have not yet filed any "opt-in notices." These are flimsy reeds, indeed. The case caption, as amended to include six (6) new representative plaintiffs, clearly reflects that Plaintiffs bring their claims "on behalf of themselves and all other similarly situated persons." (*See id.*; *see also* DE-44) And because this litigation has not yet reached the class certification stage, it is entirely unremarkable that opt-in notices have not yet been filed by members of the putative class.[4]

---

[3] Counsel for Defendants did not respond in any way to this September 5 email communication, nor did defense counsel respond to a follow-up email sent on September 22, both of which attempted to schedule depositions. (*See* Exhibit 1)

[4] Plaintiffs always have intended to add additional plaintiffs through opt-in notices at the appropriate stage of the litigation, i.e., after class certification and notice to putative class-action members. *See Long v. CPI Sec. Sys.*, 292 F.R.D. 296, 298-99 (W.D.N.C. 2013) (detailing two-step process for opt-in notices). It is ironic that Defendants would claim prejudice based on Plaintiffs not soliciting their current and former employees to join this litigation, prior to this Court authorizing such notice. Defendants cite no authority for their assertion that "Plaintiffs have not even themselves filed opt-in notices as the law requires, but actually joined this case in their individual capacities." (DE-48, p. 1; *see also* DE-50 p. 2)

Simply put, Defendants identify no prejudice from denying their motions, notwithstanding the denial of an undeserved windfall.

**2. The delay has been minimal.**

Defendants prop up the amount of time that has passed in this matter. The scheduling order does not contemplate oral arguments on Plaintiffs' (unfiled) motion for class certification until <u>December 4-15, 2017</u>. (*See* DE-35) District courts in the Fourth Circuit have categorized delays of around this amount of time to be "minimal" and unprejudicial. *See Peche v. Keller*, 2012 U.S. Dist. LEXIS 80865, at *22.

In any event, Plaintiffs could not reasonably have been expected to notice depositions for class-action topics any earlier than August 1, 2017 or soon thereafter, when they received Defendants' response to the second of two discovery deficiency letters. (*See* DE-46, ¶¶ 31-32) The deadline for moving for class certification was August 7. (DE-35) Plaintiffs could not possibly have noticed deposition topics, conducted depositions, and drafted and briefed their motions for class certification in this timeframe.

Lastly, Defendants' non-responsiveness must be considered in evaluating delay. Even today, Plaintiffs *still* lack the requisite information to move for class certification for the "$12,000 Training Cost Plaintiff Class" (*See* Second-Am. Compl. ¶¶ 61, 73-96) [DE-31]). Plaintiffs have good cause for requesting a discovery extension, if for no other reason than because Defendants have not provided responsive information necessary for identifying members of the putative class and moving for class certification.[5]

---

[5] The issue relates to the identity of automotive appearance reconditioning (AAR) technicians whose employment with Defendants terminated and from whom Defendants took payroll deductions to reimburse the company's "training costs." This discovery dispute was the subject of two letters from counsel for Plaintiffs (*see* DE-46, ¶¶ 26-33), and extensive miscommunication and disagreement between the parties. The second letter explains succinctly the importance of the unanswered Interrogatory No. 11. (*See* "Exhibit 7," DE 46-7)

### 3. Plaintiffs have acted in good faith in pursuing their class action claims.

Defendants accuse Plaintiffs of bad faith. The accusations made by Defendants include that "***Plaintiffs deliberately chose to ignore the [class certification] deadline***," (DE-48, p. 7 (emphasis in original)). Defendants allege that Plaintiffs bring class-action claims as nothing more than "placeholder[s]" to hold Defendants "hostage" (DE-48, p. 2). According to Defendants, "Plaintiffs' [motion to extend discovery] is a pathetic effort to avoid the dismissal of class claims that are being maintained *for the purpose of improperly pressuring Defendants*, which is exactly why Defendants intended to seek – and still seek – the relief sought therein." (DE-47, p. 3) (emphasis added) In other words, Defendants accuse Plaintiffs of pleading frivolous class action claims for no other reason than to extract more favorable individual settlements.

Plaintiffs do not begrudge Defendants for pressing any potential advantage gained by the inadvertence of Plaintiffs' counsel. Plaintiffs object, however, to any accusation of bad faith. There is no basis whatsoever for Defendants' assertion that Plaintiffs engaged in hostage taking, "sandbagging,"[6] or any other improper conduct. Counsel for Plaintiffs made a mistake and candidly admitted as much. As Hanlon's Razor wisely proclaims, "Never attribute to malice that which is adequately explained by neglect"—or, in this case, "excusable neglect." Defendants make no plausible argument, or provide any logical basis, for why Plaintiffs would

---

[6] Defendants' lodge the same grievance, on five separate occasions, that Plaintiffs failed to confer before filing their Motion to Extend Discovery. (*See* DE-47, p. 2; DE-48, p. 6; DE-49, p. 3; DE-50, p. 2; Doc. 51, pp. 2-3) The parties did, in fact, confer on the substance of these motions. Plaintiffs appreciate that counsel for Defendants communicated their intent to move to bar Plaintiffs' class action claims, if Plaintiffs did not consent, within no more than 24 hours. This was the first time Plaintiffs' counsel recognized the existence of the August 7 discovery deadline. The lack of further discussion between counsel was not meant to "sandbag" opposing counsel, but rather reflected the diametrically opposed positions of the parties and the mandates of this Court's Standing Order. *See* Misc. No. 3:07-MC-47, ¶ (3)(b)(iv) (Doc. No. 2) (requiring that motions to extend discovery deadlines "shall be filed immediately upon counsel learning of the need for the same.").

"deliberately" miss a scheduling deadline. Plaintiffs' counsel can assure the Court they find no pleasure in briefing these motions.

As for the argument that Plaintiffs' class-action claims are frivolous, counsel for Defendants *knows* this is not the case. The proof can be found in Plaintiffs' consistent refusal to engage in settlements until *after* a hearing on class certification. More specifically, on May 22, 2017, counsel for Defendants solicited, for the second time, a settlement offer from Plaintiffs:

> "I had asked you some time ago about a settlement . . . . If there is one to be had, shoot me the number/basis." (Exhibit 2)

Counsel for Plaintiffs again declined to engage in settlement discussions of individual claims:

> "I'm afraid we don't have a settlement offer at this time. I'll be honest – there's a lot of hard feelings on my side from these guys about how they were treated by the company (as evidence, in part, by the number of representative plaintiffs to step forward). I don't see the case settling before a hearing on class cert." (Exhibit 2)

Plaintiffs have not engaged in any settlement negotiations since this e-mail exchange. If Plaintiffs class-action claims were indeed frivolous, it begs the question why Plaintiffs have steadfastly committed to serving as representatives of the putative class, in the face of repeated efforts by Defendants to settle their individual claims.[7]

Plaintiffs' class action claims are not "placeholders" to hold Defendants "hostage," but rather an attempt to bring meaningful relief to a significant number of blue-collar workers. If anything, the overstated enthusiasm with which Defendants advance their arguments betrays the strength of Plaintiffs' claims on the merits.

---

[7] Plaintiffs agree with Defendants that now is not the proper time to litigate the merits of the class-action claims. (*See* DE-48, p. 9) However, Defendants return again to the merits when they question "whether *any such persons* exist" as putative class members. (DE-48, p. 9) (emphasis added)) This claim, too, is disingenuous. By Defendants' own admission, "as a result of an investigation by and supervised settlement with the United States Department of Labor," it was determined that Defendants failed to pay minimum wage on the "final paychecks" of certain "affected employees." (Answer ¶ 248 [Doc. 36]) This action brings meritorious claims related to the DOL investigation. Preliminary documents produced in response to written discovery requests suggests the size of the putative class is approximately 130 current and former employees of Defendants.

Because Plaintiffs' inadvertence has not resulted in any prejudice to Defendants or to the judicial administration in the case, and there is no indication of bad faith, Plaintiffs respectfully request that this Court deny Defendants' Motions.

This the 1st day of November, 2017.

**/s/ Eric Spengler**
Eric Spengler (N.C. Bar 47165)
SPENGLER & AGANS, PLLC
1713 East Blvd. Ste. B
Charlotte, NC 28203
eric@spengleraganslaw.com
(704) 910-5469 (phone)
(704) 730-7861 (fax)

Andrew L. Fitzgerald (N.C. Bar 31522)
FITZGERALD LITIGATION
119 Brookstown Ave., Ste. 402
Winston-Salem, NC 27101
andy@fitzgeraldlitigation.com
(336) 793-4365 (phone)
(336) 793-4696 (fax)

# RULE 7.1(D) CERTIFICATION

The undersigned certifies that the foregoing brief complies with Local Rule 7.1(d) of the Rules of Practice and Procedure of the U.S. District Court for the Western District of North Carolina; the requirements of Rule 3(b)(iv) of the Standing Order Governing Civil Case Management Before the Honorable Frank D. Whitney, Misc. No. 3:07-MC-47 (Doc. No. 2); and Section 3(c) of the Amended Case Management Order (Doc. 35). Based on the Word count feature in Microsoft Word, the body of the brief, headings, and footnotes do not exceed 3,000 words.

This the 1st day of November, 2017. **/s/ Eric Spengler**

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that he electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will provide notification of such filing to the following:

Jonathan W. Yarbrough
CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
84 Peachtree Rd., Suite 230
Asheville, NC 28803

This the 1st day of November, 2017. **/s/ Eric Spengler**